**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **CHARLOTTE MACKLIN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. _____** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **THE NATIONAL RAILROAD** | ) | |
| **PASSENGER CORPORATION** | ) | |
| **d/b/a AMTRAK®,** | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **Defendant.** | ) | |

**COMPLAINT**

Plaintiff, CHARLOTTE MACKLIN (hereinafter, "Plaintiff" or "Macklin"), by and through her undersigned counsel of record, and complains against Defendant, the National Railroad Passenger Corporation d/b/a "AMTRAK®," (hereinafter, "Defendant" or "AMTRAK®"), and in so doing alleges, upon information and belief, except as to allegations particularly pertaining to herself, which are based on personal knowledge, states as follows:

**NATURE OF THIS ACTION**

1.      Plaintiff, an African American female and former employee of Defendant, has filed this action against Defendant for intentional and offensive sexual harassment, racial discrimination, a hostile work environment, and retaliation in violation of Title VII of the Civil Rights Act of 1964, § 701 *et seq*., as amended, 42 U.S.C. § 2000e *et seq*., ("Title VII"), the Illinois Human Rights Act, 775 ILCS 5/2-101 *et seq*., ("IHRA"), and Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 *et seq.*, ("Section 1981").

2.      Defendant willfully and deliberately subjected Plaintiff to sexual harassment, racial discrimination, a hostile work environment, and retaliation. When Plaintiff reported and opposed

1

the sexual harassment, racial discrimination, and hostile work environment, Defendant willfully ignored Plaintiff's complaints, and retaliated against Plaintiff by terminating her employment and refusing to allow her to exercise her seniority and report to an engineering position.

3.     The racial discrimination, sexual harassment, and hostile work environment were severe or pervasive and affected the terms and conditions of Plaintiff's employment.

4.     The racial discrimination, sexual harassment, hostile work environment, and retaliation continued from 2017, when Plaintiff became a manager, and until Plaintiff was unlawfully terminated on or around August 22, 2021.

5.     Plaintiff has suffered severe and egregious injury and damage as a direct and proximate result of Defendant's unlawful conduct as alleged herein.

## JURISDICTION AND VENUE

6.     The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343(3) and (4), 1658, 2201, and 2202. This is a suit authorized and instituted pursuant to the Act of Congress known as "The Civil Rights Act of 1964," 42 U.S.C. § 2000e et seq., as amended by the "Civil Rights Act of 1991" and the "Civil Rights Act of 1866," 42 U.S.C. § 1981 and 1981(a).

7.     Venue is proper in the Northern District of Illinois under 28 U.S.C. § 1391(B) & (C) because Plaintiff was employed in this judicial district, Plaintiff currently resides in this judicial district, and Defendant has offices here, maintains personnel records here, and engages in or ratifies illegal conduct here adversely affecting Plaintiff.

## CONDITIONS PRECEDENT TO FILING SUIT

8.     Plaintiff has fulfilled all conditions precedent to the institution of this action under the Act of Congress known as "The Civil Rights Act of 1964," 42 U.S.C. § 2000e et seq., as amended by the "Civil Rights Act of 1991" and the "Civil Rights Act of 1866," 42 U.S.C. § 1981

2

and 1981(a). Plaintiff filed her Charge of Discrimination within 300-days of the last discriminatory act. (See Ex. A, Macklin EEOC Charge).

9.     Plaintiff then filed this lawsuit within 90-days of receiving her notice of right to sue from the Equal Employment Opportunity Commission. (See Ex. B, Macklin's Notice of Right to Sue).

10.     Plaintiff has fulfilled all conditions precedent to the institution of this action under the Act of Congress known as "The Illinois Human Rights Act," 775 ILCS 5/2-101 *et seq.*, (hereinafter, "IHRA"). Plaintiff filed her Charge of Discrimination within 300-days of the last discriminatory act. (See Ex. A, Macklin EEOC Charge).

11.     Macklin's claims arising under 42 U.S.C. § 1981 do not require administrative exhaustion and are subject to 28 U.S.C. § 1658's four-year statute of limitations.

## PARTIES

### A.     Plaintiff

12.     Plaintiff is an African American female citizen of the United States and a resident of Cook County, Illinois. Plaintiff was initially employed by AMTRAK® on or around September 11, 2006. She remained employed by Defendant as a Trainmaster until her unlawful termination on or around August 22, 2021. At all relevant times herein, Plaintiff was employed as a Trainmaster at Defendant's Chicago, Illinois locations.

### B.     Defendant

13.     The National Railroad Passenger Corporation d/b/a "AMTRAK®," is a passenger railroad service that provides medium and long-distance intercity service in the contiguous United States and to three (3) Canadian cities. AMTRAK® maintains its registered and head office in

3

Washington, D.C. However, Plaintiff was employed at Defendant's Chicago, IL locations: 210 South Canal Street, Chicago, IL 60607; and, 500 West Jackson Blvd., 3rd Floor, Chicago, IL 60661.

14.     Defendant is authorized to do business in the Northern District of Illinois, Eastern Division, and at all times material to this action, has engaged in an industry affecting interstate commerce. Defendant is an entity subject to suit under Title VII of the "Civil Rights Act of 1964," as amended, 42 U.S.C. Section 2000e et seq., and the Civil Rights Act of 1866, 42 U.S.C. § 1981. At all times material to this action, the Defendant has employed fifteen (15) or more employees for each working day of twenty (20) or more calendar weeks and is an employer within the meaning of Title VII.

## COMMON ALLEGATIONS

15.     Plaintiff incorporates by reference the allegations contained in her attached Charge of Discrimination. See *Exhibit A*.

16.     Plaintiff is female.

17.     Plaintiff is African American.

18.     Plaintiff worked for Defendant from on or about September 11, 2006 through her unlawful termination on or around August 22, 2021.

19.     During all relevant times herein, Plaintiff held a non-union management position.

20.     At all times relevant to this cause of action, Defendant had a duty under Title VII, the IHRA, and 29 U.S.C. § 1981 to not discriminate, harass, or subject Plaintiff to a hostile work environment on the basis of Plaintiff's race (Black) or sex (Female).

21.     Plaintiff was subjected to severe or pervasive racial discrimination from approximately 2017 through her unlawful, retaliatory termination on or around August 22, 2021.

22.     While women only make up a small minority of Respondent's management

structure, women of color have even less representation. Plaintiff was the only woman of color in management in the transportation department of the central division.

23. Respondent has a pattern and practice of subjecting women of color to unequal terms and conditions of employment.

24. In or around 2019, Respondent hired a white female "Trainmaster" by the name of Tina McDermott (hereinafter, "Tina"). Tina was subjected to favorable terms and conditions of employment, which included, but were not limited to:

   a. Tina was never required to work a night shift;

   b. Tina was allowed to participate in the hiring of subordinate employees, while Plaintiff was excluded from the hiring process as alleged herein;

   c. Whenever Plaintiff would report Tina to Rocky Harbert (hereinafter, "Rocky") or Ledric Jenkins (hereinafter, "Ledric") regarding Tina's performance related issues, or inequities between Tina and Plaintiff in job responsibilities, Plaintiff would be threatened with having responsibilities removed and transferred to Tina and on at least one occasion was told that she just "looked like the angry black woman;"

   d. Plaintiff would be asked to work from home to cover for Tina on occasions where Tina was afforded opportunities to manage Train Directors and engage in other tasks that gave her favorable hours (work schedule);

   e. When it came time to hire new Yardmasters, Plaintiff was told that she could not participate because there would be "too many black people on the panel," so Lyndsey (white) and Tina (white) were assigned to the panel instead; and

   f. Upon information and belief, Tina was given a pay raise before Plaintiff and was making more than Plaintiff.

5

25.     In or around November 2020, Respondent hired Lyndsey Humphal (hereinafter, "Lyndsey") (white) as a Trainmaster. Lyndsey held a flexible schedule and was freely allowed to take time off to tend to her horses and other personal matters. Plaintiff, a black female was constantly asked to work remotely to cover for other employees, including Lyndsey, and was scolded by management when she attempted to request vacation days she had earned. Contrarily, Lyndsey was allowed to take her vacation days as she desired and without consequence.

26.     While white females are often afforded due process under Respondent's written policies and procedures, women of color, including Plaintiff, are either escalated to the highest level of discipline or terminated for the same types of offenses.

27.     Tina and Lyndsey also received raises, and both made more than Plaintiff, despite both having years less seniority than Plaintiff.

28.     Throughout her employment, Plaintiff maintained a stellar disciplinary record, had never been placed on a performance improvement plan and had never been accused of any conduct or violation that would warrant termination.

29.     Nevertheless, on or around July 30, 2021, Plaintiff was accused of falsifying records in documenting a routine safety test, which allegedly arose to a "violation of Amtrak policies, including, but not limited to, The Code of Ethics and Standards for Behavior."

30.     Notably, there is nothing in the manual/guidelines that states a Trainmaster has to be physically present for the safety test or that the safety test must be performed "track side;" and, furthermore, upon information and belief, the following individuals conducted safety tests via radio transmission and/or engaged in misconduct and were not terminated:

       i.   Dave Dudley (white)(male)(Road Foreman)[1];
     ii.   Gary Isrealson (white)(male);
   iii.   Allen Lewis (white)(male);
   iv.   Kevin White (white)(male);
    v.   Lyndsey Humphal (white)(female); and
   vi.   Josh Page (Black)(male).

31.    Plaintiff was not counseled or coached for allegedly violating a "policy;" rather, Respondent bypassed its own written policies and simply terminated Plaintiff without affording her any opportunity to explain herself or the situation surrounding the safety test.

32.    By contrast, in or around January 2019, Amtrak Trainmaster David Torres was arrested for public intoxication while on "layover," which is a violation of Amtrak's "standards and excellence;" however, Mr. Torres was not terminated or otherwise disciplined.[2] See *Exhibit C.*

33.    Moreover, Plaintiff was terminated without the option to exercise her seniority and report to an engineering position.

    a.   Notably, white employees are afforded the opportunity to exercise their seniority upon discipline or termination. Individuals who have been allowed to exercise their seniority include but are not limited to: Dave Dudley and Gary Isrealson.

34.    Throughout the tenure of her employment, Respondent afforded Plaintiff's coworkers the opportunity to defend/explain their actions and were not terminated without question, all of which were male or white, or both:

       i.   Upon information and belief, a male coworker, Dave Dudley (white), was found to have falsified the results of a safety test and lied about his whereabouts but was not terminated from his position with Respondent.

---

[1] References to "Dave/David Dudley" refer to the individual who held a "Road Foreman" position at Amtrak. Upon information and belief, there is another employee with the same or similar name, who held/holds an Engineer position.

[2] https://www.trainorders.com/discussion/read.php?4,4844061

ii. Upon information and belief, a male coworker, Gary Isrealson (white) received several disciplinary infractions and was subsequently *promoted* by the Respondent.

iii. Upon information and belief, a male coworker, Dave Torres, was arrested for public intoxication and Respondent did not terminate him from his position. This conduct is in direct violation of Respondent's written policies.

iv. Respondent engages in a practice of "picking and choosing" which policies to apply and who to apply them to. Upon information and belief, women of color are disproportionately impacted by the discriminatory application of Respondent's written "policies."

35. Plaintiff has been subjected to unlawful, racially motivated remarks in the past by supervisors.

36. By way of example, in or around February 2020, Plaintiff reported her supervisor, Rocky (male)(white), for making a shocking and offensive racial comment directed at Plaintiff. Plaintiff reported Rocky to Respondent's internal "EEO" Office, and after over a month of "investigations" Rocky was terminated. Sadly, Plaintiff was not afforded the same due process as her white male *supervisor*, Rocky.

37. Plaintiff was sidelined into a stereotype of an "angry black woman," as her supervisors and coworkers have referred to her as "difficult," "argumentative," and "aggressive."

38. Plaintiff's most recent supervisor, Ledric, made every attempt possible to exclude Plaintiff from meetings and exclude Plaintiff from meaningfully participating in the hiring process for subordinate employees.

39. Furthermore, while employed by Defendant, Plaintiff was, in an ongoing and continuous manner, subjected to sexual harassment and a sexually offensive hostile work

8

environment.

40.     Defendant created, permitted, engaged in, ratified, and encouraged the severe or pervasive unwelcome sexual harassment.

41.     Plaintiff made reports regarding discrimination and retaliation to management and supervisors; yet, Defendant failed to stop, prevent, or mitigate the severe or pervasive sexual harassment, hostile work environment, race discrimination and retaliation.

42.     The sexual harassment that Plaintiff experienced was pervasive or severe and altered the terms, conditions, and privileges of Plaintiff's employment.

43.     The sexual harassment that Plaintiff experienced was objectively and subjectively severe or pervasive enough to create a hostile work environment; and included, but was not limited to, the following:

   a.   On at least one occasion, Ledric attempted to physically kiss Plaintiff on the lips—Plaintiff denied his sexual advances;

   b.   Ledric would "flirt" with Plaintiff, and Plaintiff would tell him "you are violating policy;"

   c.   Ledric told Plaintiff that he would go to great lengths to sabotage someone's career if they were to "cross" him;

   d.   Ledric frequently made inappropriate comments about female employees that made Plaintiff uncomfortable;

   e.   Ledric called Plaintiff to "vent" about his personal relationship with his wife and routinely asked Plaintiff for marriage advice;

   f.   Ledric told Plaintiff that he did not want Plaintiff to tell his wife "things he's done that could impact his marriage;"

   g.   Upon information and belief, Ledric violated Amtrak's Code of Ethics and Standards for Behavior by engaging in inappropriate relationships with female employees, including Caryn Bryant (HR) and Lyndsey Humphal (Trainmaster); and

9

      h. Ledric and Lyndsey had a sexual relationship at the time Lyndsey was Ledric's subordinate employee.

44. As alleged herein, Plaintiff made numerous complaints to Defendant regarding unlawful, severe or pervasive, race discrimination and sex discrimination, including, but not limited to the following:

      i. Plaintiff reported Rocky to Respondent's HR division, which ultimately led to Rocky's termination; and

      ii. When Rocky was terminated, Ledric became Plaintiff's supervisor. Ledric made numerous sexual advances aimed at Plaintiff, and Plaintiff denied those advances and told Ledric that he was in violation of company policy.

45. After reporting Rocky and denying Ledric's unlawful sexual advances, Ledric made it his mission to terminate Plaintiff.

46. In fact, on at least one occasion, Ledric told Plaintiff that he would go to great lengths to terminate anyone who "crossed him." Plaintiff perceived this as a threat.

47. At all times relevant herein, Plaintiff performed all of her job duties/responsibilities in an outstanding manner and there was no legitimate non-discriminatory/non-retaliatory reason for Defendant's unlawful treatment of Plaintiff. Plaintiff was a dedicated, hardworking, and loyal employee that contributed to Defendant's business in a substantial and meaningful manner.

48. Plaintiff has suffered severe injury and damage as a direct and proximate result of Defendant's racial discrimination, sexual harassment, hostile work environment, and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., and the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981 & § 1981(A).

49. Defendant knew and intended that its conduct violated applicable federal and state laws.

50. All allegations and claims are pled in the alternative to the extent such an

interpretation is necessitated by law, required for proper construction under the law, and permitted under federal and state law.

## COUNT I

### RACE DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. 2000e *et seq.*

51.     Plaintiff incorporates and re-alleges all preceding paragraphs as if fully set forth herein.

52.     All conditions precedent to Count I have been satisfied.

53.     At all times relevant to this cause of action, Plaintiff was an employee of Defendant, and Defendant was an employer covered by and within the meaning of Title VII.

54.     There was no legitimate, non-discriminatory basis for Defendant's unlawful racial discrimination of Plaintiff.

55.     At all relevant times herein, Plaintiff was performing all job duties in a manner that met and/or exceeded Defendant's legitimate business expectations.

56.     Defendant's unlawful racial discrimination of Plaintiff was knowing, intentional and willful, and in deliberate disregard of, and with reckless indifference to, federal and state laws.

57.     Defendant further retaliated against Plaintiff, after Plaintiff reported and complained of racial discrimination. The unlawful retaliation ultimately resulted in Plaintiff's termination on or about August 22, 2021.

58.     As a result of Defendant's actions, Plaintiff has suffered great mental anguish, humiliation, degradation, physical and emotional pain and suffering, inconvenience, lost wages and benefits, and other consequential damages.

## COUNT II

11

## RACE DISCRIMINATION IN VIOLATION OF THE ILLINOIS HUMAN RIGHTS ACT, 775 ILCS 5/2-101 *et seq.*

59. Plaintiff incorporates and re-alleges all preceding paragraphs as if fully set forth herein.

60. All conditions precedent to Count II have been satisfied.

61. At all times relevant to this cause of action, Plaintiff was an employee of Defendant under the IHRA and Defendant was Plaintiff's employer.

62. At all times relevant to this cause of action, Defendant had a duty under the IHRA to not discriminate or harass Plaintiff on the basis of Plaintiff's race.

63. Plaintiff complained of, and reported, the racial discrimination. Despite Plaintiff's complaints and reports, Defendant failed to, remediate, stop, prevent, or otherwise address the ongoing discrimination and harassment.

64. Defendant further retaliated against Plaintiff, after Plaintiff reported and complained of racial discrimination. The unlawful retaliation ultimately resulted in Plaintiff's termination on or about August 22, 2021.

65. There was no legitimate non-discriminatory basis for Defendants unlawful racial discrimination of Plaintiff.

66. At all relevant times herein, Plaintiff was performing all job duties in a manner that met and/or exceeded Defendant's legitimate business expectations.

67. Defendant's actions were knowing, intentional and willful, and in deliberate disregard of, and with reckless indifference to, federal and state laws.

68. As a result of Defendant's actions, Plaintiff has suffered great mental anguish, humiliation, degradation, physical and emotional pain and suffering, inconvenience, lost wages

and benefits, and other consequential damages.

## COUNT III

## RACE DISCRIMINATION IN VIOLATION OF
## THE CIVIL RIGHTS ACT OF 1866, 42 U.S.C § 1981

69.     Plaintiff incorporates and re-alleges all proceeding paragraphs as if fully forth herein.

70.     All conditions precedent to Count III have been satisfied.

71.     Plaintiff is a member of a racial minority. Plaintiff is African American.

72.     Defendant unlawfully subjected Plaintiff to discrimination on the basis of Plaintiff's race, in violation of Section 1981.

73.     Defendant treated Plaintiff worse than similarly situated non-African American employees in the terms, conditions, privileges, and responsibilities of her employment, as alleged herein.

74.     There was no legitimate, non-discriminatory basis for Defendant's unlawful racial discrimination.

75.     Despite Defendant being fully aware of the nature and scope of the racial discrimination, Defendant failed to stop, mitigate, prevent, remediate, or otherwise address the racial discrimination.

76.     After Plaintiff's complaints, and reports of the racial discrimination, Defendant retaliated against Plaintiff for her objection to race discrimination and harassment, as alleged herein.

77. Defendant's actions were knowing, intentional and willful, and in deliberate disregard of, and with reckless indifference to, federal and state laws.

78. As a result of Defendant's actions, Plaintiff has suffered great mental anguish, humiliation, degradation, physical and emotional pain and suffering, inconvenience, lost wages and benefits, and other consequential damages.

**COUNT IV**

**SEXUAL HARASSMENT AND HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. 2000e *et seq.***

79. Plaintiff incorporates and re-alleges all preceding paragraphs as if fully set forth herein.

80. All conditions precedent to Count IV have been satisfied.

81. Plaintiff was an employee of Defendant pursuant to Title VII from approximately September 2006 through the date of her unlawful termination on or about August 22, 2021.

82. Defendant is an employer as defined by Title VII, 42 U.S.C. 2000e *et seq.*

83. At all times relevant to this cause of action, Plaintiff was an "employee" of Defendant, and Defendant was Plaintiff's "employer" covered by and within the meaning of Title VII.

84. At all times relevant to this cause of action, Defendant had a duty under Title VII to prevent Plaintiff from being subject to sexual harassment.

85. At all times relevant to this cause of action, Defendant had a duty under Title VII to prevent the ongoing severe or pervasive sexually hostile work environment.

86. Defendant sexually harassed Plaintiff and/or created a sexually hostile work environment for Plaintiff on a regular and continuous basis.

87.    The actions of Defendant as described and complained of above, are unlawful employment practices in that they likely have the effect of discriminating against, harassing, depriving and tending to deprive equal employment to, and otherwise adversely affecting Plaintiff, in violation of Title VII.

88.    Defendant's sexual harassment and hostile work environment was severe or pervasive enough that it altered the conditions of Plaintiff's employment and both subjectively and objectively created a hostile and abusive work environment, which a reasonable person would find hostile or abusive, and which Plaintiff did find hostile and abusive.

89.    Plaintiff complained of, and objected to, the sexual harassment and hostile work environment, as alleged herein. Defendant had knowledge of the sexual harassment and severe and pervasive sexually hostile work environment.

90.    Despite Plaintiff's complaints, and Defendant's knowledge of the severe or pervasive sexual harassment and sexually hostile work environment, Defendant failed to stop, prevent, or otherwise address the ongoing harassment and sexually hostile work environment.

91.    The sexual harassment and hostile work environment was severe or pervasive enough to alter the terms and conditions of Plaintiff's employment.

92.    Defendant's actions were intentional and willful, and in deliberate disregard of and with reckless indifference to the federal laws and state laws.

93.    Defendant engaged in the foregoing acts and conduct when they knew or should have known that the same were in violation of Title VII and any alleged reasons to the contrary are pretext.

94.    Plaintiff was terminated after she denied Ledric's unlawful sexual advances.

95.    The actions of Defendant in intentionally engaging in and condoning sexual

15

harassment against Plaintiff and creating a sexually hostile work environment has caused Plaintiff great mental anguish, humiliation, degradation, physical and emotional pain and suffering, inconvenience, lost wages and benefits, and other consequential damages.

**COUNT V**

**SEXUAL HARASSMENT AND HOSTILE WORK ENVIRONMENT IN VIOLATION OF THE ILLINOIS HUMAN RIGHTS ACT, 775 ILCS 5/2-101 *et seq.***

96.     Plaintiff incorporates and re-alleges all preceding paragraphs as if fully set forth herein.

97.     All conditions precedent to Count V have been satisfied.

98.     Plaintiff was an employee of Defendant pursuant to IHRA from approximately September 2006 through the date of her unlawful termination on or about August 22, 2021.

99.     Defendant is an employer as defined by IHRA.

100.    At all times relevant to this cause of action, Plaintiff was an "employee" of Defendant, and Defendant was Plaintiff's "employer" covered by and within the meaning of IHRA.

101.    At all times relevant to this cause of action, Defendant had a duty under IHRA to prevent Plaintiff from being subject to sexual harassment.

102.    At all times relevant to this cause of action, Defendant had a duty under IHRA to prevent the ongoing severe or pervasive sexually hostile work environment.

103.    Defendant sexually harassed Plaintiff and/or created a sexually hostile work environment for Plaintiff on a regular and continuous basis.

104.    The actions of Defendant as described and complained of above, are unlawful employment practices in that they likely have the effect of discriminating against, harassing, depriving and tending to deprive equal employment to, and otherwise adversely affecting Plaintiff,

16

in violation of IHRA.

105.    Defendant's sexual harassment and hostile work environment was severe or pervasive enough that it altered the conditions of Plaintiff's employment and both subjectively and objectively created a hostile and abusive work environment, which a reasonable person would find hostile or abusive, and which Plaintiff did find hostile and abusive.

106.    Plaintiff complained of, and objected to, the sexual harassment and hostile work environment, as alleged herein. Defendant had knowledge of the sexual harassment and severe and pervasive sexually hostile work environment.

107.    Despite Plaintiff's complaints, and Defendant's knowledge of the severe or pervasive sexual harassment and sexually hostile work environment, Defendant failed to stop, prevent, or otherwise address the ongoing harassment and sexually hostile work environment.

108.    The sexual harassment and hostile work environment was severe or pervasive enough to alter the terms and conditions of Plaintiff's employment.

109.    Plaintiff was terminated after denying Ledric's unlawful sexual advances.

110.    Defendant's actions were intentional and willful, and in deliberate disregard of and with reckless indifference to the federal laws and state laws.

111.    Defendant engaged in the foregoing acts and conduct when they knew or should have known that the same were in violation of IHRA and any alleged reasons to the contrary are pretext.

112.    The actions of Defendant in intentionally engaging in and condoning sexual harassment against Plaintiff and creating a sexually hostile work environment has caused Plaintiff great mental anguish, humiliation, degradation, physical and emotional pain and suffering, inconvenience, lost wages and benefits, and other consequential damages.

17

## COUNT VI

### UNLAWFUL RETALIATION AND TERMINATION FOR EXERCISE OF RIGHTS UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. 2000e et seq.

113.    Plaintiff re-alleges and incorporates all preceding paragraphs as if fully set forth herein.

114.    All conditions precedent to Count VI have been satisfied.

115.    Plaintiff complained about, reported, opposed and protested Defendant's unlawful sexual harassment, hostile work environment and racial discrimination, in violation of Title VII, as alleged herein.

116.    Defendant's sexual harassment and racial discrimination, as alleged herein, was so severe or pervasive that it affected the terms and conditions of Plaintiff's employment and subjectively and objectively created a hostile and abusive work environment, which a reasonable person would find hostile or abusive, and which Plaintiff did find hostile and abusive.

117.    On or about August 22, 2021, Plaintiff was terminated due to Defendant's failure to stop the ongoing sexual harassment and racial discrimination.

118.    Defendant's conduct alleged herein directly and proximately caused Plaintiff to suffer great mental anguish, humiliation, degradation, embarrassment, physical, and emotional pain and suffering, inconvenience, lost wages and benefits, future pecuniary losses, and other consequential damages.

## COUNT VII

### UNLAWFUL RETALIATION FOR EXERCISE OF RIGHTS UNDER THE ILLINOIS HUMAN RIGHTS ACT, 775 ILCS 5/2-101 et. seq.

119.    Plaintiff re-alleges and incorporates all preceding paragraphs as if fully set forth herein.

18

120.    All conditions precedent to Count VII have been satisfied.

121.    Plaintiff complained about, reported, opposed and protested Defendant's unlawful sexual harassment, hostile work environment and racial discrimination, in violation of IHRA, as alleged herein.

122.    Defendant's sexual harassment, hostile work environment and racial discrimination, as alleged herein, was so severe or pervasive that it affected the terms and conditions of Plaintiff's employment, and subjectively and objectively created a hostile and abusive work environment, which a reasonable person would find hostile or abusive, and which Plaintiff did find hostile and abusive.

123.    On or about August 22, 2021, Plaintiff was terminated due to Defendant's failure to stop the ongoing sexual harassment and racial discrimination.

124.    Defendant's conduct as alleged herein directly and proximately caused Plaintiff to suffer great mental anguish, humiliation, degradation, embarrassment, physical and emotional pain and suffering, inconvenience, lost wages and benefits, future pecuniary losses, and other consequential damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Charlotte Macklin requests the following relief:

1.    Acceptance of jurisdiction of this cause;

2.    Damages sufficient to compensate Plaintiff for her injuries;

3.    Back Pay;

4.    Reinstatement;

5.    Emotional Distress Damages;

6.    Pre-judgment and post-judgment interest;

7.    Punitive damages;

8.    Reasonable attorney's fees;

9.    An award of litigation costs and expenses; and

10.    Any and all other relief that this Honorable Court may deem just and equitable.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the Complaint.

Dated:  February 16, 2023          Respectfully submitted,

FOOTE, MIELKE, CHAVEZ & O'NEIL, LLC

s/*Elizabeth C. Chavez*

Elizabeth C. Chavez (#6323726)
Kathleen C. Chavez (#06255735)
Bret K. Pufahl (#6325814)
Peter L. Currie (#6281711)
FOOTE, MIELKE, CHAVEZ & O'NEIL, LLC
10 West State Street, Suite #200
Geneva, Illinois 60134
Telephone: (630) 232-7450
Facsimile: (630) 232-7452

*Attorneys for Plaintiff*

20

## **ATTORNEY CERTIFICATION**

I, **ELIZABETH C. CHAVEZ**, representing the Plaintiff, **CHARLOTTE MACKLIN**, in the above-captioned cause of action, hereby certify that I have read the foregoing **COMPLAINT**, and after making reasonable inquiry, to the best of my knowledge, information, and belief, I believe this document, to be well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

Dated:   February 16, 2023                    Respectfully submitted,

                                              FOOTE, MIELKE, CHAVEZ & O'NEIL, LLC

                                              /s/Elizabeth C. Chavez

                                              Elizabeth C. Chavez (#6323726)
                                              FOOTE, MIELKE, CHAVEZ & O'NEIL, LLC
                                              10 West State Street, Suite #200
                                              Geneva, Illinois 60134
                                              Telephone: (630) 232-7450
                                              Facsimile: (630) 232-7452

                                              *Attorneys for Plaintiff*